The Honorable Tim Wooldridge State Senator P.O. Box 339 Paragould, AR 72451
Dear Senator Wooldridge:
You have requested my opinion on certain issues arising out of the following fact situation:
The Northeast Arkansas School District and the Stanford School District signed a pre-annexation agreement on March 21, 1994, annexing the Stanford School District into the Northeast Arkansas School District. That district is now known as the Paragould School District. The agreement provided that a K-6 configured elementary school would be maintained in the Stanford community until such time as the previous year's enrollment fell below 75% of the 1993-94 K-6 Stanford School enrollment. The 1993-94 K-6 enrollment at Stanford was 93 students. 75% of that number is 69.75 or 70 students. That level was maintained until the beginning of the 1996-97 school year. At that time, the K-6 enrollment at the Stanford campus was 58 students. The school year was completed with an enrollment of 63 students. The school board considered closing the Stanford Elementary School at that time, but due to overall anticipated pupil growth, the board decided to continue operations and ease crowded conditions at the other K-4 schools and the 5-6 middle school. The board is now considering a different configuration at Stanford.
Accordingly, you have presented the following questions:
 (1) Is the 1994 consolidation agreement still binding on the present board of the Paragould School District?
 (2) Were the terms of the agreement met when the enrollment dropped below the benchmark number during the 1996-97 year?
 (3) Is it within the board's authority to reconfigure or close this school?
RESPONSE
Question 1 — Is the 1994 consolidation agreement still binding on thepresent board of the Paragould School District?
It is my opinion that the 1994 consolidation agreement is not binding on the present board of the Paragould School District.
The Arkansas Supreme Court has held that school boards can contractually bind their districts and the inhabitants thereof only in instances in which they have been given express statutory authority to do so. SeeBrown v. Gardner, 232 Ark. 197, 334 S.W.2d 89 (1960). School boards have not been granted statutory authority to contractually bind their successor boards concerning the maintenance or closing of schools at particular locations. In Brown, supra, the court addressed a situation similar to the one you have described. There, the Cherry Hill School District entered into a consolidation agreement with the Perryville School District. Under that agreement, a condition for the consolidation was that a one-room school be maintained at Cherry Hill as long as ten students were in attendance. The Perryville School Board later discontinued the school, even though there were still ten students in attendance. Certain electors and patrons of the former Cherry Hill district sued the Perryville School Board, seeking (among other remedies) dissolution of the consolidation, on the grounds that the agreement had been violated.
The court rejected the argument, stating:
 School District Directors can only enter into agreements which bind their districts and the inhabitants thereof by reason of express statutory authority. School District No. 18 of Jackson County v. Grubbs Special School District, 184 Ark. 863, 43 S.W.2d 765. A person contracting with a Board of Education is presumed to know the limitations of its powers and can acquire no right by contract which said board is not clearly authorized to make. Rural Special School District No. 50 v. First National Bank, 173 Ark. 604, 292 S.W. 1012.
 There is no statutory authority giving school directors the power to enter into contracts agreeing to maintain a school at a certain place indefinitely. The powers of school directors are conferred by law for public purposes, and the exercise thereof, involving as it does a matter of future policy properly subject to change to meet changing conditions, cannot be restricted by an agreement of the nature of the one here involved. To hold otherwise would create a school at Cherry Hill not subject to change by anyone as long as the condition is met.
Brown v. Gardner, 232 Ark. at 199. Accord, East Poinsett County Sch.Dist. No. 14 v. Massey, 315 Ark. 163, 866 S.W.2d 369 (1993) (holding that subsequent legislation conflicting with term in consolidation agreement concerning composition of school board was effective and did not constitute unconstitutional impairment of contract); Bates v. Orr,236 Ark. 499, 367 S.W.2d 122 (1963) (upholding school board's choice of alternative site for school in contravention of term of consolidation agreement); Fomby School District No. 26 v. Williams, 203 Ark. 235,156 S.W.2d 220 (1941) (holding that term of consolidation agreement requiring that schools be maintained at certain locations was "surplusage" and could not bind school board); School Dist. 18 v. Grubbs Spl. Sch. Dist.,184 Ark. 863, 43 S.W.2d 765 (1931). See also Martin v. Frazier,291 Ark. 120, 722 S.W.2d 835 (1987) (upholding the closing of an elementary school in contravention of a consolidation agreement on basis of lack of evidence that such closing was unreasonable, and on basis of broad language of the agreement).
On the basis of these authorities, I conclude that the 1994 consolidation agreement is not binding on the present board of the Paragould School District.
Question 2 — Were the terms of the agreement met when the enrollmentdropped below the benchmark number during the 1996-97 year?
It is not the appropriate role of the Attorney General to construe the provisions of contracts that are under dispute. Such construction is the role of the judiciary, which is in a position to consider all appropriate matters that are relevant to construction of the contract and to hear the views of all interested parties. Because I am not in a position to consider such matters, I cannot draw any conclusions concerning the legal or contractual implications of the enrollments figures you have provided (although there is clearly no doubt that an enrollment figure of 58 students does fall below 75% of 93). The question of whether the terms of the agreement were met as a result of these enrollment figures is a matter that should be analyzed in consultation with the district's counsel.
Question 3 — Is it within the board's authority to reconfigure or closethis school?
It is my opinion that the board does have the authority to reconfigure or close this school.
Each school board is granted express statutory authority to determine the sites for the district's school buildings. This authority is set forth in A.C.A. § 6-13-620, which states in pertinent part:
 The board of directors of each school district in the state shall be charged with the following powers and perform the following duties:
 (1) Have the care and custody of the schoolhouse, grounds, and other property belonging to the district and shall keep it in good repair and in sanitary and sightly condition;
* * *
 (3) Purchase buildings or rent schoolhouses and sites therefor and sell, rent, or exchange such sites or schoolhouses;
* * *
 (12) Do all other things necessary and lawful for the conduct of efficient free public schools in the district.
A.C.A. § 6-13-620.
The Arkansas courts have long interpreted this statute as allowing school boards wide latitude in governing their districts. See, e.g., Safferstonev. Tucker, 235 Ark. 70, 72, 357 S.W.2d 3, 4 (1962); Isgrig v. Srygley,210 Ark. 580, 197 S.W.2d 39 (1946). See also Springdale Board ofEducation v. Bowman, 294 Ark. 66, 69, 740 S.W.2d 909, 910 (1987); LeolaSchool District v. McMahan, 289 Ark. 496, 498, 712 S.W.2d 903, 905
(1986). The courts have further held that they will not substitute their judgment for that of a school board with regard to policy matters, unless the school board, in enacting the policy in question, abused its discretion or acted arbitrarily, capriciously, or contrary to law. Id.
The court in Leola, supra, explained "arbitrary and capricious" action by a school board as being action that is not supportable "on any rational basis." Leola, 289 Ark. at 498, 712 S.W.2d at 905. It should be noted that the party challenging the school board's policy has the burden of proving the board's abuse of discretion by clear and convincing evidence.Springdale, 294 Ark. at 69, 740 S.W.2d at 910.
Given this wide discretion that the courts accord to school boards in governing their districts, it is my opinion that unless a challenger could factually establish that the present board of the Paragould School District had abused its discretion or acted contrary to law in deciding to reconfigure or close the Stanford school site, the courts will uphold that decision. Martin v. Frazier, 291 Ark. 120, 722 S.W.2d 835 (1987).
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General